UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


ROGER PERSINGER,

       Plaintiff,

v.                      Case No. 2:09-cv-00825

NAOMI ROBERTS, Health Services
Administrator,
DR. SUBHASH GAJENDRAGADKAR,
WEXFORD HEALTH SOURCES, INC.,
TERRI COLEMAN, Food Service Supervisor,
and ARAMARK CORRECTIONAL SERVICES, LLC,

       Defendants.


## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are the following motions: a Motion to Dismiss filed by defendants Dr. Subhash Gajendragadkar, Naomi Roberts and Wexford Health Sources, Inc. (docket sheet document # 13), a Motion to Dismiss filed by Aramark Food Service, Inc. and Terri Coleman (# 15), a Motion to Dismiss Allegations, If Any, Regarding Acts Prior to May 1, 2008, filed by Naomi Roberts (# 27) and a Motion to Dismiss Allegations, If Any, Regarding Acts Prior to May 1, 2008, filed by Dr. Subhash Gajendragadkar (# 29). This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. §

636(b)(1)(B).

**PROCEDURAL HISTORY**

Plaintiff filed his initial Complaint (# 1) on July 20, 2009. Following service of process, on September 4, 2009, defendants Dr. Subhash Gajendragadkar[1], Naomi Roberts, and Wexford Health Sources, Inc. (collectively referred to as "the Wexford Defendants") filed a Motion to Dismiss (# 13) and a Memorandum in support thereof (# 14). On September 9, 2009, defendants Aramark Correctional Services, LLC[2] and Terry Coleman filed a Motion to Dismiss (# 15) and a Memorandum in support thereof (# 16).

On October 20, 2009, Plaintiff filed a Response to the Motion to Dismiss filed by the Wexford Defendants (# 19). On that same date, Plaintiff filed a Response to the Motion to Dismiss filed by the Aramark Defendants (# 20).

On November 6, 2009, the Aramark Defendants filed a Reply (# 22). On November 23, 2009, Plaintiff filed a Sur-Reply to the

---

[1]  The undersigned will refer to Dr. Gajendragadkar as "Dr. Subhash" herein, as that what the inmates at the Mount Olive Correctional Complex ("MOCC") called him and that is how Plaintiff has addressed him in his documents.

[2]  Plaintiff's Complaint named "Ararmark Food Service, Inc." as a defendant. Aramark's Motion to Dismiss indicates that the proper name of the food service provider at the Mount Olive Correctional Complex is "Aramark Correctional Services, LLC." The Clerk terminated "Aramark Food Service, Inc." and substituted "Aramark Correctional Services, LLC" as the proper defendant. Although the Motion to Dismiss is in the name of "Aramark Food Service, Inc.," the undersigned will treat is as having been filed on behalf of "Aramark Correctional Services, LLC" and will hereinafter refer to this defendant as "Aramark."

2

Aramark Defendants' Reply (# 24).  The Aramark Defendants moved to strike the Sur-Reply (# 26).  That motion has been denied by separate Order.  The court will consider Plaintiff's Sur-Reply.

On February 8, 2010, attorney Joseph Farrell, who had previously been retained as counsel for Correctional Medical Services, Inc. (hereinafter "CMS"), the contracted healthcare provider at MOCC prior to Wexford Health Sources, and presumed employer of Dr. Subhash and Naomi Roberts prior to May 1, 2008, filed two Motions to Dismiss on behalf of Dr. Subhash and Naomi Roberts (## 27 and 29), with accompanying Memoranda of Law in support thereof (## 28 and 30).  The motions filed by Mr. Farrell request dismissal of any allegations against these two defendants concerning conduct that occurred prior to May 1, 2008, when Wexford took over the healthcare contract from CMS at MOCC.  On March 3, 2010, Plaintiff filed a letter-form Response to the Motions to Dismiss filed by Mr. Farrell (# 31).  Mr. Farrell filed a Reply on behalf of Dr. Subhash and Ms. Roberts on March 24, 2010.  These motions are ripe for determination.

**STANDARD OF REVIEW**

In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007), the Supreme Court observed that a motion to dismiss should be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain "enough facts to state a

3

claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id.

The Supreme Court further explained its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [Twombly, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50. These principles will guide this court's consideration of Plaintiff's claims and the defendants' motions to dismiss.

## ANALYSIS

### Deliberate indifference standard

In <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" <u>Id.</u>, at 833.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." <u>Id.</u>, at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Id.</u>, at 837.

5

Plaintiff's Complaint alleges that the defendants have exhibited a deliberate indifference to Plaintiff's serious medical needs, in violation of his Eighth Amendment rights. "In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see also Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. See Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. See id. Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. See Estelle, 429 U.S. at 106.

Miltier, 896 F.2d at 851-852.

6

The burden of demonstrating deliberate indifference to a serious medical need by correctional officials and health care providers is very high.  It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain.  See Farmer, 511 U.S. at 832-35; Sosebee v. Murphy, 797 F.2d 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

Rush v. VanDevander, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); Banks v. Green Rock Correctional Center Medical Dept., 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).  For example, in Sosebee, the Fourth Circuit found that if prison guards were aware that a steak bone had pierced an inmate's esophagus, causing infection that resulted in the inmate's death, and the guards had intentionally abstained from seeking medical help, such conduct might establish deliberate indifference to a serious medical need.

In Webster v. Jones, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his initial complaint, but never re-examined despite later complaints. The doctor claimed that he examined Webster several times, but never diagnosed a medical problem with his eye.  Id. at 1286. Subsequently, a specialist found that Webster's vision had deteriorated to 20/400 and that he suffered from a detached retina and iritis, and that his vision could not be restored.  Id.  The

7

Fourth Circuit found that, even if the doctor had been negligent in failing to properly diagnose or treat Webster, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need and, thus, Webster's allegations did not constitute a cognizable constitutional claim.   See also, Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).  As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate.  Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

<u>Allegations in Plaintiff's Complaint</u>

In his Complaint documents, Plaintiff complains that the defendants have been deliberately indifferent to his serious medical needs concerning acid reflux and a hiatal hernia, from which Plaintiff had suffered prior to his incarceration. Plaintiff's Complaint alleges that in December of 2002, Dr. Jose L. Oyco at Raleigh General Hospital diagnosed Plaintiff with a hiatal hernia and severe gastroesophageal reflux.   (# 1 at 5, ¶ 9).

According to the Complaint, Plaintiff continued to be treated by Dr. Oyco until his incarceration in 2004.  Plaintiff alleges that Dr. Oyco told him he would need surgery in order to correct Plaintiff's conditions.  (<u>Id.</u>, ¶¶ 10-12).

Plaintiff's Complaint further alleges as follows:

13.  Since Plaintiff's incarceration from (2004) until the present, Plaintiff has underwent various tests procedures which only confirmed Plaintiff's previous diagnosis that Plaintiff suffers from a (<u>hiatal hernia w GERD</u>) and what has now been termed as (<u>Barretts Espohagus</u>) or Grade IV Reflux.  See (<u>February 2007 Report as (Plaintiff's Ex. # 3</u>))

14.  Again in (<u>December 2007</u>) after undergoing further testing by a Doctor Mohamed Sankari at Montgomery General Hospital Plaintiff was ordered to stay away from "NSAIDS" type of medication . . . Plaintiff was also prescribed a high fiber diet with lifestyle modifications needed.  See (<u>Plaintiff's Ex. # 4</u>).

15.  Although Plaintiff is now suppose[d] to be receiving a heart healthy, bland and high fiber diet and has informed Terri Coleman Food Service Supervisor of the foods Plaintiff could and could not eat - Plaintiff was informed that despite his medically prescribed diet and doctor's instructions regarding lifestyle modifications (or) (<u>to only eat those foods he knew to agree with him</u>) that - "Plaintiff <u>would</u> <u>not</u> be able to dictate what foods he received."  See (<u>Grievance dated (4-27-09), (4-29-09), (May 11, 2009), (5-26-09)</u> with attachments to Terri Coleman herein as (<u>Plaintiff's Ex. # 5</u>).

16.  In fact due to complaints Plaintiff has made in regards to not receiving his (<u>medically prescribed diet</u>) or for simply informing Terri Coleman of the foods Plaintiff could and could not eat as instructed by the doctor - Plaintiff continues to be ignored by food service and continues to receive and be served foods by food service . . . Defendant Coleman has been informed and knows quite well Plaintiff is unable to eat or digest properly which

amounts to a blatant disregard of Plaintiff's medical health and dietary needs regarding Plaintiff's health.

17. It should be noted that Wexford Medical Inc. routinely maintains the custom and practice of denying and delaying medical care when it takes Plaintiff and prisoners at Mount Olive "months" to be seen by a doctor.

18. On approx. (June 21, 2008) after months of trying to see a doctor Plaintiff was finally seen by Doctor [Subhash] regarding Plaintiff's condition (Subhash) informed Plaintiff that due to the "cost" for surgery and the fact that Plaintiff was in prison (an inmate) - that plaintiff's corrective surgery would have to wait until after Plaintiff was released from prison because Wexford was not going to pay for it.  See herein (Plaintiff's Ex. # 6).

19. Again on apprx. (December 15, 2008) after months in delays of trying to see a doctor, Plaintiff was finally seen by a Doctor Gajendragadkar [who is Dr. Subhash] and was again informed that if Plaintiff needed surgery he'd have to wait until he was released from prison because Wexford Medical Inc. was not going to pay for the cost of surgery - additionally [this] doctor stated that he felt there was nothing wrong with Plaintiff and thus nothing would be done.  (See Plaintiff's Ex. # 7).

20. To this day, Plaintiff's medical and medical dietary needs continued to be ignored and disregarded by defendants and Plaintiff seeks redress (Naomi Roberts is overseer of health care.)

(Id. at 6-8, ¶¶ 13-20).

Motions to Dismiss Allegations Before May 1, 2008 (## 27 and 29)

To the extent that Plaintiff has alleged facts concerning his treatment prior to May 1, 2008, when Wexford took over the contract to provide medical services to inmates at MOCC, attorney Joseph Farrell filed two Motions to Dismiss those allegations against Dr.

10

Subhash and Naomi Roberts (## 27 and 29).   It appears that Mr.
Farrell filed these motions in order to address any conduct by
these two defendants while they were employed at MOCC by the
previous healthcare provider, CMS, whom Mr. Farrell frequently
represents.   Both motions state:

> The purpose of this motion is to seek dismissal of
> the Complaint as it pertains to this defendant for any
> and all acts or omissions which are alleged to have
> occurred prior to this defendant's employment with
> Wexford Health Sources Inc. on May 1, 2008.   This
> defendant incorporates the Motion to Dismiss previously
> filed on [his/her] behalf as if it is fully restated
> herein.   This defendant incorporates the Memorandum of
> Law previously filed on [his/her] behalf as if fully
> restated herein.

(# 27 at 1; # 29 at 1).   The Memorandum of Law in support of Naomi
Roberts' Motion to Dismiss Allegations Before May 1, 2008 further
states:

> The Complaint in this case specifically links this
> defendant to Wexford Medical Incorporation and the
> Complaint affirmatively states that this defendant
> "is/was at all times pertinent hereto employed by Wexford
> Medical Incorporation . . . ."  Wexford began providing
> health care services to the prisons in West Virginia on
> May 1, 2008.   The Complaint does not allege any act or
> omission by this defendant in the pre-May 1, 2008
> timeframe.

> Dismissal of the Complaint against this defendant
> for the pre-May 1, 2008 timeframe is mandated by Rule
> 12(b)(6) as the Complaint fails to state a cause of
> action for which relief may be given for that timeframe.

(# 28 at 4).   The Memorandum of Law in support of Dr. Subhash's
Motion to Dismiss Allegations Before May 1, 2008 repeats the same
argument.   (# 30 at 4).

Plaintiff filed a letter-form Response to these Motions to
Dismiss in which he argues:

> Both Naomi Roberts and Dr. [Subhash] [were] present on
> Feb. 23-09 when I filed grievance no. 09-MOCC-Q2 85.  I
> had been waiting to see Dr. Subhash for 3 months and
> suffering the whole time when finally was seen and
> nothing done.  I put in another sick call after that.
> I'm not clear on when but around May 09 I was housed in
> medical for 9 days and was made to eat a regular diet to
> see my reactions.  I don't even know how many times I
> threw up during that time, but it is documented because
> I was told to show the nurses on duty when I got sick.
> Then when Dr. Subhash seen me he told me there was
> nothing wrong with me.    I asked him if he was serious.
> I got no answer.  Then Dr. Subhash give me a new diet
> order of Ex. 2 on 5-19-09.  I begged him for a wedge
> pillow & a diet of just cereal, eggs, veg. & fruit 3
> times a day 7 days a week.  He said no that Aramark did
> not want me to have it, but he would talk to them &
> nothing happened.  I put in for help several times in
> 2009 for my diet & medication.  So there for [sic;
> therefore] Dr. Subhash & Naomi Roberts were present on
> all 2009 attempts to get help so therefore should not be
> dismissed.

(# 31 at 1-2).  Plaintiff also attached a document entitled "Legal
Notice of Complaint" dated "Sept. 22nd, 08."  Within that document,
Plaintiff states:

> Mr. David Ballard, as Warden of M.O.C.C. is the
> "Contractual Oversight Authority" over the Medical
> Services, Hospital Administrator Teresa Taylor, of
> "Wexford Health Sources" at M.O.C.C. and the "Contractual
> Oversight Authority" over the "Aramark Food Services" at
> M.O.C.C.

> Comes now the Complainant, Roger Persinger, to notify:
> Mr. David Ballard, Warden of M.O.C.C.; of the deliberate
> indifference to and of serious medical and dietary needs
> by the aforementioned, causing the complainant extreme
> pain, suffering, injury and irreparable harm.

> The Complainant, Roger Persinger is currently assigned a
> Medical Diet (Heart Healthy, High Fiber, Bland, No

Spices) served in a styrofoam tray, this diet is specific
due to the serious and severe medical needs of the
Complainant and is ordered by Wexford Medical Sources;
from the date of 2/22/08 to the date of 2/22/09.

This Medical Diet Order is not being honored or complied
with by the Aramark Food Service, who are exhibiting
Deliberate Indifference to this Complainant's serious and
severe medical conditions and dietary needs.

This Complainant has filed numerous grievances and all
have had no result of compliance or enforcement by way of
any administrative remedies.

This Complainant has a Constitutional Right under the
Eighth Amendment to the United States Constitution to
proper and adequate Medical Treatment and proper and
nutritionally adequate prepared food, compliant with
medical dietary orders and needs, equal in nutrition and
portion.

(# 31 at 3-5). Plaintiff also provided a log of meals he had

between June 26, 2008 and November 12, 2008. (Id. at 7-35).

Mr. Farrell filed a Reply brief on behalf of Dr. Subhash and

Ms. Roberts which asserts that Plaintiff's documents concern events

that took place after May 1, 2008 and, therefore, Plaintiff still

has not alleged any specific conduct by Dr. Subhash or Ms. Roberts

that pre-dates May 1, 2008. (# 32).

The undersigned agrees that the Complaint itself and the other

documentation provided by Plaintiff does not allege any specific

conduct by Dr. Subhash or Ms. Roberts that took place prior to May

1, 2008, when Wexford took over the health care contract at MOCC.

Moreover, any allegations about events that occurred prior to July

20, 2007 are likely barred by the two-year statute of limitations

applicable to section 1983 claims.[3]

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim against either Dr. Subhash Gajendragadkar or Naomi Roberts for any conduct that took place prior to May 1, 2008.

<u>Motion to Dismiss Wexford Defendants (# 13)</u>

Turning to the Motion to Dismiss filed on behalf of Dr. Subhash, Ms. Roberts and Wexford Health Sources, Inc. filed by attorney Philip C. Petty, it also asserts that Plaintiff's Complaint fails to state a claim against these defendants.  After a brief discussion of the deliberate indifference standard, the Memorandum in support of the Motion to Dismiss states:

> An examination of plaintiff's Complaint in this civil action reveals that the plaintiff has fallen far short of the standard set forth above.  In Paragraph 8 of the Complaint, the plaintiff alleges that his serious medical condition is acid reflux disease accompanied with a hiatal hernia.  Plaintiff was evidently diagnosed with these problems in 2002 (Paragraph 9 and Exhibit 1 to plaintiff's Complaint).  Interestingly, plaintiff alleges in Paragraph 10 that he followed the course of treatment for the next year and his condition worsened.  Again, all this happened before plaintiff was incarcerated.

> Although the acid reflux disease and hiatal hernia are the alleged serious medical condition, the plaintiff does not actually allege that he has been denied treatment for these conditions.  Instead, plaintiff complains that he has been denied surgery and allegedly was told by Dr. [Subhash] that surgery would have to wait until he was no longer an inmate.  (Paragraph 19 of Complaint).  The only basis for plaintiff's contention that he needs surgery is his allegation in Paragraph 11

_____

[3]  Plaintiff's Complaint was filed on July 20, 2009.  (# 1).

that a doctor "Oyco" informed the plaintiff that the plaintiff would need surgery "in order to correct the problem abnormalities associated with plaintiff's disease."   This self-serving hearsay is the only allegation with reference to the need for surgery.   The Complaint contains no description of the type of surgery or even when the surgery was recommended to be performed. Of interest is the plaintiff's statement that he did not obtain the surgery before he was incarcerated sometime in 2004.

Rather than allege that he has not been treated for his serious medical condition, the plaintiff in Paragraph 13 of the Complaint clearly states that he has undergone numerous tests and procedures since he has been incarcerated.   Through Exhibits and allegations in the Complaint, it is revealed that he has, at least, been seen at Montgomery General Hospital for tests and procedures in February 2007 (Paragraph 13 and Exhibit 3 of the Complaint) and December 2007 (Paragraph 14 and Exhibit 4 of the Complaint).   Interestingly, neither Exhibit 3 nor Exhibit 4 contain any recommendation as to surgery.   The plaintiff is to modify his lifestyle and make dietary changes.   In addition, Exhibit 3 merely states that he should take Prilosec, Zantac and continue taking his Reglan.   There is no recommendation for surgery.

Defendant attempts to avoid the issue that Wexford is not a "person" under Section 1983, by making a general allegation in Paragraph of the Complaint that it is Wexford's custom and practice to deny and delay medical care.  However, the plaintiff then recites the occasions where he has been seen by a physician.  In addition, it is clear from the Complaint that medical care is also provided by non-physician employees of Wexford through medical call and the availability of nurses and/or physician's assistance [sic; assistants] at the facility. Absent plaintiff's conclusory statement that Wexford has a custom and practice of denying and delaying medical care, there are no facts alleged in the Complaint to support such allegation.

(# 14 at 3-4).

Concerning the allegations against Dr. Subhash, the Wexford Defendants' Memorandum states in pertinent part:

15

The only allegations against Dr. Gajendragadkar under the name Dr. Subhash and Gajendragadkar are Paragraphs 18 and 19, wherein plaintiff alleges that he was told by the doctor that "plaintiff's corrective surgery" (Paragraph 18) and "if plaintiff needed surgery" the plaintiff would have to wait until he was released. In addition, the plaintiff alleges that Dr. Gajendragadkar believed that nothing was wrong with the plaintiff. The last allegation is obviously untrue since he has been seen and treated by the medical staff and prescribed medication. These allegations against the doctor fall far short of the standard set forth above to show deliberate indifference. Basically, the plaintiff is demanding surgery of an unspecified type without any support in the records attached to the Complaint other than the hearsay statement that in 2004, he was told by a doctor that he needed some type of surgery.

At best, plaintiff has shown that he disagrees with the doctor in his course of treatment. The facts in the Complaint clearly show that his alleged serious medical condition of acid reflux and hiatal hernia have not been ignored by the medical staff, including Dr. Gajendragadkar. While the plaintiff may not have received the treatment which he wants, he certainly has received treatment as shown by the allegations of the Complaint and the Exhibits attached thereto.

(Id. at 4-5).

Finally, concerning the allegations against Naomi Roberts, the

Wexford Defendants' Memorandum states:

It appears that the sole allegation against Naomi Roberts is that she has failed "to take any corrective measures to ensure plaintiff received adequate healthcare." (Paragraph 23 of the Complaint). There is no allegation that she participated in any of his treatment, nor any decisions regarding his alleged serious medical condition. His allegations fall far short of stating any claim against Ms. Roberts for deliberate indifference, especially when the Complaint and Exhibits show that he has received adequate medical care. Again, the only care that appears to have been denied is the vague surgery that he wishes to have. Interestingly, even the plaintiff states that adequate medical care would include "adequate follow-up care which

16

> if needed would include surgery." (Paragraph 22 of the
> Complaint). Thus, his claim that Naomi Roberts and the
> other medical defendants have not provided adequate
> medical care is predicated upon surgery which may be
> optional if indeed any surgery is warranted.

(Id. at 5-6).

Plaintiff's Response to the Wexford Defendants' Motion to Dismiss asserts that the treatment he has been receiving "has been ineffective in treating or even managing his condition." (# 19 at 2). Plaintiff's Response further asserts that an ultrasound and a colonoscopy that were recommended by Dr. Sankari when Plaintiff was seen at Montgomery General Hospital on November 15, 2007, were never completed and haven't even been scheduled. (Id. at 2-3). The Response further states:

> The plaintiff with a 2 cm large hiatal hernia and a stage
> 4 5 cm long segment of Barrett's with erosive antral
> gastritis. These types of ailments can only be
> completely cured with a surgical procedure as any
> impartial doctor would agree to the same. The surgery is
> not a questine [sic; question] of medical judgment as
> claimed by the defendants, but a fact that this stage and
> type of disorder will not heal itself absent surgery.
> "Patently ineffective gestures purportedly directed twrds
> [sic; towards] remedying objectively unconstitutional
> conditions, do not prove a lack of deliberate
> indifference, they demonstrate it." Coleman v. Wilson,
> 912 F. Supp. 1282, 1319 (E. D. Cal. 1995).

(Id. at 4). Plaintiff further argues that, if Ms. Roberts did not participate in his treatment or decisions concerning his treatment, then she was deliberately indifferent because she is responsible for provision of the overall healthcare services at MOCC. Plaintiff argues that "failure to act in the face of known

17

violations of its written policies is relevant circumstantial evidence to show knowledge and state of mind." <u>Woodward v. Correctional Medical Services</u>, 368 F.3d 917, 930 (7th Cir. 2004). (<u>Id.</u> at 6). The Wexford Defendants did not file a reply brief.

The undersigned proposes that the presiding District Judge **FIND** that, disregarding the conclusory allegations and legal conclusions, pursuant to <u>Twombly</u> and <u>Iqbal</u>, and taking the facts alleged in Plaintiff's Complaint and accompanying documents as true, the allegations concerning Plaintiff's medical treatment by the Wexford Defendants fail to rise to the level of deliberate indifference to a serious medical need. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim upon which relief may be granted against defendants Gajendragadkar, Roberts and Wexford Health Sources, Inc.

<u>Motion to Dismiss filed by Aramark Defendants (# 15)</u>

The allegations against defendants Aramark and Coleman focus on the failure to provide Plaintiff with a special diet to alleviate his medical conditions. The Aramark Defendants' Memorandum in support of their Motion to Dismiss states in pertinent part:

> While an inmate at Mount Olive Correctional Complex, Plaintiff underwent additional medical testing at Montgomery General Hospital in December of 2007, and was instructed to follow a "high fiber diet with lifestyle modification." Complaint at p. 6, ¶ 14. However, the discharge order from Montgomery General Hospital bearing

18

that instruction further indicated that "If [Plaintiff's] physician has instructed [him] differently, [he is] to follow the advise of [his] physician." Plaintiff's Exhibit 4 at p.1, "Home Instructions." Plaintiff also appears to take various prescription medications to manage his medical condition. Plaintiff's Exhibit 3 at p.2, "Plan."

Plaintiff subsequently informed the Aramark Defendants that he required a "medical diet" by submitting a hand-written letter to Defendant Terri Coleman that contained a list of "Foods I can eat" and "Foods I cannot eat." Plaintiff's Exhibit 5; Complaint at p. 6, ¶ 15. Plaintiff alleges that the Aramark Defendants refused to provide him with a diet conforming to his instruction, and thereby violated his constitutional rights and caused him injury. Complaint at pp. 10-11, ¶¶ 26-30.

(# 16 at 1-2).

The Memorandum further indicates that Plaintiff filed a grievance concerning his diet on April 27, 2009, in which he stated that his "diet tray ha[d] been wrong several times in April[.]" The Unit Manager responded to the grievance stating that they would "start taking pictures of [Plaintiff's] tray to show discrepancies[,]" and would contact food service when necessary. Plaintiff's Exhibit 5. Plaintiff appealed the decision to the Warden, who affirmed the decision stating that Plaintiff "failed to state exactly how [his] food tray was 'wrong' and exactly when." The Warden further stated, "You will not be permitted to dictate what foods you receive. The food service department will comply with the physician's written diet order only." Id. Plaintiff appealed the Warden's decision to the Commissioner, who also affirmed the decision. Id.

19

The Aramark Defendants' Memorandum of Law contends that Plaintiff has no constitutional right to a special diet, "particularly in the absence of any order for such a diet issued by prison medical officials." (# 16 at 5). The Aramark Defendants further assert that, in order to successfully assert an Eighth Amendment claim against them, "Plaintiff must show that the Aramark Defendants <u>knew</u> that depriving Plaintiff of his special diet would cause serious harm." (<u>Id.</u>)(citing <u>Davis v. Williamson</u>, 208 F/ Supp.2d 631, 633 (N.D. W. Va. 2002). The Aramark Defendants argue:

> In this case, Plaintiff's allegations reveal no "deliberate indifference" by the Aramark Defendants. The only evidence of Plaintiff's "medical condition" allegedly known to the Aramark Defendants arrived via Plaintiff's hand-written request for a special diet. Plaintiff does not identify any other source of that request to the Aramark Defendants. In the context of a prison food service receiving a hand-written request for a special diet from an inmate, with no supporting medical orders or instruction from the prison medical department, a refusal to provide the special diet certainly falls far short of "deliberate indifference." <u>See</u> <u>Jefferson v. Douglas</u>, 493 F. Supp. 13, 18 (W.D. Okla. 1979)("Plaintiff is complaining of no more than a difference of opinion between he and the Defendant prison officials as to the proper diet he is to receive for his diabetes. Such a difference of opinion . . . does not constitute cruel and unusual punishment . . . or sustain a claim under 42 U.S.C. § 1983."); <u>see also</u> <u>Carlisle v. Scott</u>, 357 F. Supp. 1284 (N.D. Ill. 1973)(dismissing, for failure to state a cause of action, inmate's Eighth Amendment claim based on prison's failure to serve a medically-necessary "bland diet"); <u>Snow v. Gladden</u>, 338 F.2d 999 (9th Cir. 1964)(dismissing, for failure to state a cause of action, inmate's Eighth Amendment claim based on prison's failure to serve a special diet for ulcer condition).

> Indeed, Plaintiff's Complaint reveals nothing more than a difference in opinion between Plaintiff and prison officials regarding his medical treatment. The medical

20

records attached to the Complaint as Plaintiff's Exhibit
3 are particularly revealing.  Those records reflect a
biopsy procedure performed on Plaintiff's on February 8,
2007, while Plaintiff was an inmate at Mount Olive
Correctional Complex.  The section titled "Plan" on
Plaintiff's Exhibit 3 instructs Plaintiff to use three
prescription medications for his medical condition
(Prilosec, Zantac, and Reglan).  See Plaintiff's Exhibit
3 at p.2.  However, Plaintiff's Complaint and supporting
exhibits make no reference to any denial or deprivation
of those prescription medications for treatment of
Plaintiff's medical condition.  Plaintiff's exhibits
indicate that Plaintiff is indeed receiving medical
treatment for his medical condition.  His preference for
a special diet is simply a difference of opinion
regarding appropriate treatment, and a difference of
opinion is widely recognized as insufficient to state a
cause of action under 42 U.S.C. § 1983. [Citations
omitted].

(Id. at 6-7).

Plaintiff's Response to the Aramark Defendants' Motion to
Dismiss cites to the West Virginia Division of Corrections'
Operational Procedure 4.20 regarding "Food Service," which states
in pertinent part:

Section F.  "Special Diets" Page 3 [§ 2a(1)]:

"Certain chronic conditions as well as temporary ones may
require individual attention.  Consideration also should
be given to dietary restrictions for mental health
patients of items that may aggravate their symptoms."

(# 20, Ex. 1).  Plaintiff asserts that his stomach condition and
the limitations on the food he can eat renders him an inmate whose
diet requires special attention.  (# 20 at 2).

Attached to Plaintiff's Response is a Medical Diet Order that
was requested for Plaintiff on May 18, 2009, and was to be in place
from May 19, 2009 to May 19, 2010.  (Id., Ex. 2).  The Medical Diet

Order states that Plaintiff is to be served a "bland diet w/ styrofoam tray." (<u>Id.</u>)  The Medical Diet Order also states "D/C previous diet order," which the undersigned believes stands for "discontinue previous diet order." (<u>Id.</u>)  Also attached to Petitioner's Response are a number of grievances Plaintiff filed during the time period of January 16, 2008 and February 23, 2009 in which Plaintiff complains about his food tray not complying with the heart-healthy, bland diet he was supposed to be receiving. (<u>Id.</u>, Exs. 4-18).  The responses to these grievances indicate that there was a diet order in place prior to May 19, 2009.  The grievance responses further indicate that Food Services was being notified of the discrepancies with Plaintiff's food trays. (<u>Id.</u>) Plaintiff argues that Aramark and Terri Coleman were clearly aware of the repeated problems with Plaintiff's food trays, and that their failure to correct these problems exhibited deliberate indifference to his serious medical needs, and left him with a choice of eating foods that aggravated his problems or not eating at all. (<u>Id.</u> at 4).

The Aramark Defendants filed a Reply brief in which they first assert that their Motion to Dismiss was predicated on the allegations in Plaintiff's Complaint, which did not indicate that a Medical Diet Order had been in place prior to May of 2009.  The Reply further states:

> Plaintiff has offered no evidence that the Aramark
> Defendants were authorized by a physician's order to

provide plaintiff with a special diet at the time of his
numerous, vague, grievances.  In the absence of a Diet
Order  effective  at  the  time  of  the  plaintiff's
grievances, the Aramark Defendants were not authorized to
provide plaintiff with a special diet, as explained in
Section F of the Food Service Operational Procedure #
4.20 attached as Exhibit 1 to plaintiff's Response.  In
the absence of any allegation that the Aramark Defendants
were under a Diet Order at the time of plaintiff's
grievances, or that the Aramark Defendants actually
deviated from a specific physician's Diet Order, the
plaintiff  has  failed  to  allege  any  "deliberate
indifference"  by  the  Aramark  Defendants.      Rather,
plaintiff merely describes a non-actionable difference of
opinion regarding his treatment.

(# 22 at 2).

The Aramark Defendants further assert, however, that, even if

Plaintiff was receiving incorrect meals on occasions prior to the

May 19, 2009 Diet Order, such infrequent occurrences do not exhibit

deliberate indifference.  (Id.)  The Aramark Defendants contend

that the fourteen grievances submitted by Plaintiff span a period

of approximately 15 months and were filed in a sporadic and grouped

fashion (Plaintiff filed several grievances at one time, every

three months or so).  (Id. at 2-3 and n.3)  The Reply further

states:

The revealing facts behind plaintiff's Complaint are the
periods  of  several  months  each  in  which  plaintiff
asserted no grievances whatsoever regarding his diet.  An
average of one grievance per month certainly does not
reach the level of "deliberate indifference" required to
show a deprivation of constitutional rights, particularly
when several of plaintiff's grievances focus on such
complaints as missing fruit or bread, or simply claiming
that a meal was "wrong" without elaboration.

(Id. at 3).  Thus, the Aramark Defendants argue that, even assuming

that Plaintiff was subject to an earlier Diet Order, the nature of
his complaints are too minor or infrequent to constitute deliberate
indifference sufficient to support a constitutional violation.
(<u>Id.</u> at 5).   The Aramark Defendants note that the United States
Court of Appeals for the Fourth Circuit has made clear that "only
<u>extreme deprivations</u> are adequate to satisfy the objective
component of an Eighth Amendment claim." <u>Shakka v. Smith</u>, 71 F.3d
162, 166 (4th Cir. 1995)(emphasis added).  (<u>Id.</u> at 6).

     Plaintiff filed a Sur-Reply in which he clarifies that he had
a similar bland diet for 5 years dating back to when he was
incarcerated at the Southern Regional Jail, and that he was only in
possession of the most recent Diet Order.  (# 24 at 1).  Plaintiff
further states that he has not provided all of the grievances that
he filed, but selected certain ones.  He further states that the
Warden had directed Plaintiff's unit staff to take pictures of
Plaintiff's food tray when it was incorrect.  (<u>Id.</u> at 2).
Plaintiff further contends that he has thrown up when he has been
given the regular food tray and that he spent 9 days in medical as
a result.  He further claims that he "has been & still am in
constant suffering & pain" and that "this has gone on for <u>years</u>."
(<u>Id.</u>)

     The undersigned has reviewed the cases cited by the Aramark
Defendants, which all held that, absent a showing of a specific
intent to cause harm to the prisoner or the presence of severe

24

injuries under a denial of medical treatment, the conduct of prison authorities does not reach the level of a constitutional violation. In each of the cases cited by the Aramark Defendants, the plaintiffs alleged that they, like Plaintiff, had been repeatedly denied a medically necessary bland diet over a lengthy period of time. See Carlisle, 357 F. Supp. 1284, and Snow, 338 F.2d 999, supra; see also Hurley v. Field, 282 F. Supp. 34 (C.D. CA. 1968)(where evidence that state prisoner had been provided medical treatment for his ulcer, claim that he had been removed from ulcer diet did not entitle him to relief under civil rights statute).

Plaintiff's claim is indistinguishable from these cases which failed to state a claim upon which relief can be granted. Accordingly, disregarding the conclusory allegations and legal conclusions, pursuant to Twombly and Iqbal, and taking the facts alleged in Plaintiff's Complaint and accompanying documents as true, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint does not sufficiently allege that the Aramark Defendants were deliberately indifferent to his serious medical needs and, thus, fails to state a claim upon which relief can be granted against them.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by Dr. Subhash Gajendradgadkar, Naomi Roberts and Wexford Health

Sources, Inc. (# 13), **GRANT** the Motion to Dismiss filed by Aramark Correctional Services, LLC and Terri Coleman (# 15), **GRANT** the Motion to Dismiss Allegations, If Any, Regarding Acts Prior to May 1, 2008, filed by Naomi Roberts (# 27) and **GRANT** the Motion to Dismiss Allegations, If Any, Regarding Acts Prior to May 1, 2008, filed by Dr. Subhash Gajendragadkar (# 29), and dismiss this action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), the Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Synder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S.

140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United</u>
<u>States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such
objections shall be served on opposing parties and Chief Judge
Goodwin.

The Clerk is directed to file this Proposed Findings and
Recommendation and to mail a copy of the same to Plaintiff and
counsel of record.

<u>    August 6, 2010    </u>                    <u>Mary E. Stanley    </u>
            Date                           Mary E. Stanley
                                   United States Magistrate Judge

27